221 F.Supp. 106 (1963)
CHICAGO SOUTH SHORE AND SOUTH BEND RAILROAD, Plaintiff,
v.
UNITED STATES of America and Interstate Commerce Commission, Defendant.
Civ. No. 3055.
United States District Court N. D. Indiana, South Bend Division.
September 5, 1963.
*107 Lawyer, Schroer & Eichhorn, Hammond, Ind., for plaintiff.
Lee Loevinger, Asst. Atty. Gen., Elliott H. Moyer, Atty., Dept. of Justice, Washington, D. C., Alfred W. Moellering, Ft. Wayne, Ind., for the United States.
Robert W. Ginnane, Gen. Counsel, Arthur J. Cerra, Asst. Gen. Counsel, for respondent I. C. C.
Before HASTINGS, Circuit Judge, and GRANT and ESCHBACH, District Judges.
ESCHBACH, District Judge.
This is an action to vacate, annul, and set aside an order issued by the Interstate Commerce Commission, dated January 24, 1962, authorizing the issuance of 10,000 shares of common capital stock by the Chicago South Shore and South Bend Railroad, in connection with an employee stock option plan, in so far as that order attaches as a condition of such issuance that the selling price of the stock subject to the option plan, should not be less than the par value thereof. The action further seeks to vacate, annul, and set aside an order of the Commission dated March 12, 1962, denying plaintiff's petition for modification of the order of January 24, 1962, and also to vacate, annul, and set aside the refusal of the Secretary of the Commission to file South Shore's petition for reconsideration.
This action was heard in South Bend, Indiana, on June 17, 1963, by a three-judge court pursuant to 28 U.S.C.A. § 2284. The applicable authority under which the action was heard is to be found more specifically in §§ 1336, 1398, 2284, and 2321 to 2325, inclusive, of Title 28 United States Code.
The plaintiff herein, Chicago South Shore and South Bend Railroad, is a corporation duly organized and existing under the laws of the State of Indiana, with its principal office in Michigan City, Indiana. It is a carrier by railroad engaged in transporting passengers and property over a railroad line some 90 miles in length between South Bend, Indiana, and Chicago, Illinois, with intermediate points. It carries freight baggage, express, and the United States mail over its line and is a common carrier.
On October 23, 1961, plaintiff filed an application with the defendant, Interstate Commerce Commission, requesting authority under Section 20a of the Interstate Commerce Act, 49 U.S.C.A. § 20a, to issue 10,000 shares of $12.50 par value common stock in conformity with the terms of a restricted stock option plan approved by plaintiff's board of directors and adopted by a majority of its shareholders at an annual meeting. The stock option plan provides that the option price of the stock shall be 100 per cent of the market value of the stock at the time the option is granted. The plaintiff has only one class of capital stock  common stock with a par value of $12.50, with 670,000 shares authorized, of which 311,580 shares are issued and outstanding. This stock has been listed on the Midwest Stock Exchange since 1952 and has ranged in price from a high of $21 to a low of $6¾. By its order dated January 24, 1962, the Commission authorized plaintiff to issue the stock in accordance with the provisions of the stock option *108 plan, but subject, however, to the condition imposed by the Commission "that, in no event, shall the selling price of the said stock be less than the par value thereof."
Subsequently, plaintiff filed a petition for modification of the order and requested the Commission to eliminate the condition so imposed. Division 3 of the Commission, in denying the petition, found
"That the issuance and sale of the proposed common stock at less than the par value thereof would tend to dilute the rights of the holders of petitioner's presently outstanding common stock and to impair petitioner's ability to market future securities, and that the condition is necessary in order to support the required finding that the proposed issuance of securities will be compatible with the public interest."
Plaintiff then filed a petition for reconsideration which was rejected by the Secretary of the Commission and returned to plaintiff, along with a letter advising plaintiff that Rule 1.01 of the Commission's General Rules of Practice provided that all division orders were administratively final except in certain specified instances.
Plaintiff first contends that the Commission exceeded its jurisdiction and acted arbitrarily, capriciously, and without support of any substantial evidence [in the record] in attaching as a condition of its approval the requirement that the issuance of the securities in question be at a price no less than the par value thereof.
Clearly, it is within the power of the Commission to attach conditions to its orders. The very language of Section 20a expressly confers upon the Commission the
"* * * power by its order to grant or deny the application as made, or to grant it in part and deny it in part, or to grant it with such modifications and upon such terms and conditions as the commission may deem necessary or appropriate in the premises * * *."
The dominant purpose of the financial provisions of Section 20a is to maintain a sound structure for support of railroad credit to aid in developing a national transportation system. Indirectly, these provisions were also designed to protect the investing public against faulty or dishonest financing which could result in dissipation of railroad resources and thus to promote confidence of investors in railroad securities. Breswick & Co. v. United States, 156 F.Supp. 227 (S.D.N.Y. 1957), reversed on other grounds, Alleghany Corporation v. Breswick & Co., 355 U.S. 415, 78 S.Ct. 421, 2 L.Ed.2d 374 (1958). Although the states had long regulated the issuance of securities by interstate carriers, the jurisdiction conferred upon the Commission by Section 20a is "exclusive and plenary." 49 U.S. C.A. § 20a(7). Carriers are allowed to issue securities without securing approval of any authority other than that of the Commission. Upon the face of the provisions of Section 20a relating to finance and management, Congress has shown a clear intent to occupy completely the field of railroad securities regulation. The Commission has proceeded upon this basis, and the constitutional validity of the power under which it operates has been upheld. Pittsburgh & W. V. Ry. Co. v. Interstate Commerce Commission, 54 App.D.C. 34, 293 F. 1001 (1923), appeal dismissed, 266 U.S. 640, 45 S.Ct. 124, 69 L.Ed. 483 (1924). It is clear that the guiding standards of Section 20a which emphasize the discretionary character of the Commission's regulatory powers authorize the Commission to impose any condition relevant to the purposes of maintaining the financial integrity of the railroads and the preservation of a national system of transportation.
Plaintiff's contention that the Commission, in attaching the condition to its approval, acted without support of any substantial evidence is without foundation. Plaintiff maintains that because it was denied a hearing by the Commission, there was nothing from which any *109 factual information could be derived to support the condition. The record discloses that the Commission had before it the financial statements of the plaintiff which were submitted with the original application, and also the petition for modification which contained reference to the price quotations of the plaintiff's stock as shown by the listings of the Midwest Stock Exchange. With this information before it in the record, the Commission could properly take official notice of the actual price quotations of plaintiff's stock which appeared regularly in publications of wide daily circulation. As stated by the Supreme Court,
"Administrative agencies have power themselves to initiate inquiry, or, when their authority is invoked, to control the range of investigation in ascertaining what is to satisfy the requirements of the public interest in relation to the needs of vast regions and sometimes the whole nation in the enjoyment of facilities for transportation, communication and other essential public services. * * * Thus, this Court has recognized that bodies like the Interstate Commerce Commission, into whose mould Congress has cast more recent administrative agencies, `should not be too narrowly constrained by technical rules as to the admissibility of proof.'"
Federal Communications Commission v. Pottsville Broadcasting Co., 309 U.S. 134, 142, 60 S.Ct. 437, 441, 84 L.Ed. 656 (1940). In oral argument plaintiff related that it intended to produce no further evidence in regard to its position concerning the condition, and, further, that the Commission carried the burden of proving that the condition was in the public interest. This is erroneous. Once the Commission has made its decision, based upon substantial evidence, the one attacking the decision has the burden of showing that it is unjust and unreasonable in its consequences. Federal Power Commission v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944). Plaintiff thus has the burden of proving that its proposed stock issue conforms to the public interest and that the order of the Commission, with the attached condition, was arbitrary, capricious, and erroneous because it was not based upon any substantial evidence. Plaintiff has failed to carry that burden.
In reviewing orders of administrative agencies, a court must consider the broad discretion of such agencies and their expert judgment based upon the experience and qualifications of their members in determining if there exists a rational basis for such orders. "The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body." Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 287, 54 S.Ct. 692, 694, 78 L.Ed. 1260 (1934). The Commission found that
"* * * the condition is necessary in order to support the required finding that the proposed issuance of securities will be compatible with the public interest."
Upon consideration of the record as a whole, there is to be found a rational basis for the order in question. The Commission properly exercised a statutory discretion which this court cannot say is arbitrary and capricious. We therefore hold that under the facts and circumstances of this case, the condition that the selling price of the stock in question be sold at not less than the par value of $12.50 rests upon a rational basis and is not arbitrary and capricious. We do not say that in all instances involving employee stock option plans for railroad employees, par value is a reasonable standard upon which to condition issues of stock. Upon the evidence before the Commission, however, including plaintiff's financial statements, the stock price quotations, and the fluctuations of plaintiff's stock price from a low of $6¾ to a high of $21, a minimum option price of $12.50 was a condition having a rational basis from the record as a whole. In attaching the condition in question, the Commission was performing an administrative *110 function. We may not substitute our judgment for that of the Commission on this critical issue.
In Federal Power Commission v. Idaho Power Co., 344 U.S. 17, 73 S.Ct. 85, 97 L.Ed. 15 (1952), the Court of Appeals for the District of Columbia had modified an order of the Federal Power Commission by striking certain conditions which the Commission had attached to an order granting a license for the construction of a hydroelectric power project. In reversing, the Supreme Court, Mr. Justice Douglas speaking, said, at p. 20 of 344 U.S., at p. 86 of 73 S.Ct.:
"But the court by the second judgment undertook to modify the license. * * * On remand the Commission might have reissued the order without the contested conditions or it might have withheld its consent to any license. It is the Commission's judgment on which Congress has placed its reliance for control of licenses. * * * When the court decided that the license should issue without the conditions, it usurped an administrative function. * * *
"The court, it is true, has power `to affirm, modify, or set aside' the order of the Commission `in whole or in part.' * * * But that authority is not power to exercise an essentially administrative function. * * *
"Under these sections the Commission is plainly made the guardian of the public domain."
Similarly, in the case at bar, the Interstate Commerce Commission is made the guardian of the public interest inasmuch as Congress has clothed it with authority to regulate railroad security issues. This court does not have the right to eliminate from the order in question a condition which the Commission has found requisite to its determination that the stock issuance is in the public interest.
Plaintiff's contention that it was denied procedural due process of law by the Commission's failure to grant it a hearing is without support in the evidence. An examination of the administrative record reveals that plaintiff never requested a hearing or offered to introduce evidence to prove that the condition imposed was not proper, as required by Rule 1.101(b) of the Commission's General Rules of Practice. 49 C.F. R. § 1.101(b) (1963). The order of March 12, 1962 was administratively final under Rule 1.101(a) of the Commission's General Rules of Practice (49 C.F.R. § 1.101(a)) and therefore the Secretary's refusal to file the plaintiff's petition for reconsideration was proper under the Commission's revised procedure limiting the right to apply for reconsideration. See Malone Freight Lines, Inc. v. United States, 204 F.Supp. 745 (N.D.Ala.1962). Plaintiff was not entitled to a hearing as a matter of right, as Section 20a(6) clearly makes such hearings discretionary with the Commission.
Upon the facts of this case, as adduced by the record and oral argument, plaintiff has failed to show that the Commission acted without substantial evidence or that it acted in an arbitrary and capricious manner in conditioning its approval of plaintiff's issuance of stock on the requirement that the stock be not sold for less than its par value of $12.50. The requirement that the option price be not less than the $12.50 par value has a reasonable relationship to the Commission's duty to maintain the integrity of railroad securities in order to preserve railroad credit and a sound national transportation system. A rational basis having been established to support the condition imposed by the Commission, this court will not substitute its judgment for that of the Commission.
The court deems this order to include its findings of fact and conclusions of law, and now orders as follows:
1. That the order of the Interstate Commerce Commission of January 24, 1962 be, and it is hereby, affirmed.
2. That the complaint of the plaintiff should be, and it is hereby, dismissed on its merits.